Scofield, J.,
delivered the opinion of the court:
This case was transmitted to the court by the Secretary of the Treasury, under the Act March 3,1883 (22 Stat. L., p. 485, 485, § 2), known as the Bowman Act..
It involves a demand on the part of the claimant for a repayment of about $350,000 alleged to have been advanced, under-contract, in bounties to volunteers in 1863-’64, in addition to-$563,027.67 already repaid.
The facts are as follows
*398 October 17,1863, the President, by proclamation, called upon tbe “ governors of the different States to raise and have enlisted into the United States service, for the various companies and regiments in the field from their respective States, their quotas of 300,000 men.”
The proclamation contained, among other things, the following:
“ I further proclaim that all volunteers thus called out and duly enlisted shall receive advance pay, premium, and bounty, as heretofore communicated to the governors of States by the War Department through the Provost-Marshal-General’s Office by special letter.
“I further proclaim that if any State shall fail to raise the quota assigned to it by the War Department under this call, then a draft for the deficiency in said quota shall be made on said State or on the districts of said State for their due proportion of said quota, and the said draft shall commence on the fifth day of January, 1864.” (13 Stat., 736.)
The following general order and circular contain the provisions relative to pay, premium, and bounty referred to in the proclamation:
“[General Orders, No. 191.]
“ WAR DEPARTMENT,
“Adjutant-General’s Oeeice,
“ Washington, June 25, 1863.
.*>. ,'b .O, .U. JJ. "A* 7? TP 'A* "fr W Vi"
“ III. Every volunteer enlisted and mustered into service as a veteran, under this order, shall be entitled to receive from the United States one month’s pay in advance, and a bounty and premium of four hundred and two ($402) dollars, to be paid as follows:
1.Upon being mustered into service lie sliall be paid one month’s pay in advance. $13 00
First installment of bounty. 25 00
Premium. 2 00
Total payment on muster. 40 00
2. At the first regular pay-day, or two months after mustering, an additional installment of bounty will be paid.•_ 50 00
3. At the first regular pay-day after six months’ service he shall be paid an additional installment of bounty. 50 00
4. At the first regular pay-day after the end of the first year’s service an additional installment of bounty will be paid._ 50 00
5. At the first regular pay-day after eighteen months’ service an additional installment of bounty will be paid. 50 00
6. At the first regular pay-day after two years’ service an additional installment of bounty will be paid. 50 00
*399 7. At the first regular pay-day after two and a half years’ service an additional installment of bounty will be paid. f¡50 00
8. At the expiration of three years’ service the remainder of the bounty will be paid. 75 00
* ***** *
“ By order of the Secretary of War.
“E. I). Townsend,

u Assistant Adjutcmt-General.”

“ [Circular No. 98.
“War Department,
“ Provost-Marshal-General’s Oeeige,
“ Washington, D. O., November 3, 1863.
“ The following regulations are established, with the approval of the Secretary of War, and will govern mustering and disbursing officers in their payments of the advance bounty, premium, and advance pay to recruits (not veterans) enlisted by recruiting officers, to serve for three years or the war, in old regiments now organized, whose terms of service expire in 1864 and 1S65:
“ I. To all recruits enlisting as above required there will be paid one month’s pay in advance, and, in addition, bounty and premium amounting to $302, as follows, viz:
On being mustered into the United States service under this authority, and before leaving the recruiting station or depot to join his company or regiment, the recruit shall receive one month’s ad- ■ vanee pay. $13 00
First installment of bounty. 60 00
Premium. 2 00
Total pay before joining liis regiment.•. 75 00
At the first regular pay-day, or two months after muster-in, an ad- • ditional installment of bounty will be paid. 40 00
At the first regular pay-day after six months’ service an additional installment of bounty will be paid.-. 40 00
At the first regular pay-day after eighteen months’ service an additional installment of bounty will be paid. 40 00
At the first regular pay-day after the end of the first years’ service an additional installment of bounty will be paid. 40 00
At the first regular pay-day after two years’ service an additional installment of bounty will be paid. 40 00
At the expiration of three years’ service, or to any soldier enlisting under this authority who may be honorably discharged after two years’ service, the remainder of the bounty will be paid. 40 00
*******
“James B. Fry,
“ Provost-Marshal-General.”
October 24, 1863, the following additional order was issued by tlie Provost-Marshal-General:
“ If the government shall not require these troops for the full period of three years, and they shall be mustered honorably out of the service before the expiration of their term of enlistment, *400 they shall receive, upon being mustered out, the whole amount-of bounty remaining unpaid, the same as if the full term had. been served. The legal heirs of recruits who die in service shall be entitled to receive the whole bounty remaining unpaid at-the time of the soldier’s death.”
The quota of the State of New Hampshire under this call-amounted to 3,708 men.
Thereupon J. A. Gilmore, governor of the State, issued the-following proclamation, dated November 4, 1803:
“ The President of the United States has issued a proclamation calling upon the governors of the loyal States to raise for the service of the United States, before the 5th day of January next, 300,000 volunteers. The quota for New Hampshire under this call will be as follows:
For the first Congressional district. 1,390
For the second Congressional district. 1,129-
For the third Congressional district. 1,249
Total.i...3,768
“ The quotas of the different towns and wards will be announced as speedily as possible from the adjutant-general’s-office.
#######
“ The general government gives to each fresh recruit $302, to each veteran $402. In addition to these sums, I do hereby (with the advice and consent of the executive council) offer a bounty of $100 to every man who volunteers in response to this call before the 5th day of January next, and I would recommend to the several cities and towns to take immediate measures for promptly raising their full quotas by offering (in accordance with the law enacted July 9, 1862) reasonable town bounties to be paid in addition to the government and State bounties, or for the purpose of cashing the bounties offered by the general government, so that they shall be paid to each volunteer in full when he is mustered into service.”
# * * # * # *
On the same day, to wit, November 4,1863, the governor and Daniel Clark joined in the following telegram:
“ Concord, N. H., November 4, 1863.
“ Hon. E. M. Stanton :
“Sir: If to secure its quota of men under the last call of' the President for 300,000 men the State of New Hampshire or the various towns should pay in cash to each man mustered the amount of the bounty offered by the general government, and take an assignment of his claim for a bounty, will the government pay these bounties to the State or towns instead of *401 to the men, at the time and in the manner they are to be paid to the soldiers respectively ? If this can be done we all concur that we can raise our fall quota speedily. Answer by telegraph.
“ J. A. GtlMORE.
“Dan’l Clark.”
This proposition was responded to as follows:
“ War Department,
“Provost-Marshal-General’s Bureau,
“ Washington, D. 0., Wovember 5, 1863.
“ His Excellency Governor Gilmore,
“ Concord, Weiv Hampshire :
“Tour telegram to the Secretary of War, asking if “the State of New Hampshire or the various towns should pay in cash to each man mustered the amount of bounty offered by the general government, and take an assignment of his claim for bounty, will the government pay these bounties to the State or towns instead % ” has .been received.
“ The proposition will be entertained and the bounty paid to the State or towns, as proposed by you, for every recruit raised under the present call and duly mustered into the United States service and delivered at the general rendezvous.
“ James B. Fry,
“ Provost-Marshal-General.”
Thereafter the State of New Hampshire, through its several cities and towns, furnished, within the time required, its quota of volunteers, and they were duly mustered into the service of. the United States. Through the cities and towns the State paid to each fresh recruit $302 and to each veteran $402, and took an assignment of his right to bounty.
The government has repaid to the State all the bounties that the volunteers could have themselves claimed under the foregoing orders and circular had they enlisted without the intervention of the State.
Whep the volunteer deserted and failed to comply with the terms of his enlistment, the government has withheld such payment from the State.
Upon the facts of the case the Secretary of the Treasury has submitted to the court the following questions:
“I. Whether there exists between the State of New Hampshire and the United States a contract which the State is en *402 titled to set up, under which it has a right to further repayment of mouey so advanced
“ II. Whether the United States is under obligation to so reimburse the State to the extent of all moneys advanced to the respective soldiers who were duly enlisted under said agreement, delivered at general rendezvous, and duly mustered into the service of the United States, without evidence of subsequent service on the part of the soldier1?”
It appears by an examination of the telegrams of November 4 and 5 that the Provost-Marshal-G-eneral agrees that in case the State or town furnishes the volunteers and becomes the assignee of the “ claims for a bounty,” the government shall “ pay the bounties to the State or town instead of to the men at the time and iu the manner they are to be paid to the soldiers respectively.”
This language seems too plain for dispute. In the payments of bounties the assignee is to stand “ instead of the men” — instead of the assignors. The assignees are to be paid all the money that the “ claim for bounty ” calls for. No more is promised. Whatever the assignor might have claimed the assignee may claim. The claim for bounty is not enlarged by the assignment; nor is the time of payment changed. Whenever an installment of the “ claims for bounty ” becomes payable to the soldier the assignee may demand it; not before. The manner of payment is unchanged. The bounties are to be paid to the claimant (so runs the agreement), not only “ at the time,” but “ in the manner, they are to be paid to the soldiers respectively.” The word “manner” must-have some meaning here. Worcester’s Dictionary gives as one definition of “ manner” a “ certain degree, measure, or extent.” The claim for bounty in the hands of the soldier has its surroundings, its “ degree, measure, or extent';” its conditions and its limitations. With such surroundings it passes to the assignee. At no time and in no manner could a deserter claim the future installments of his bounty. The assignee, who has agreed to abide “ the time and manner of the soldiers respectively,” is in no better position.
It is claimed, however, that these terms were subsequently modified or authoritatively construed by the following correspondence :
*403 “State oe New Hampshire,
“ Oeeioe Acting- Assistant
Provost-Marshal-General,
“ Ooncord, N. H., November 11, 1863.
“ Gol. James B. Fry,

“Provost-Marshal-General, Washington,!). C.:

u Colonel : From conversations held with Governor Gilmore I learn that he has had some correspondence with yon respecting the State advancing the amount of bounty offered by the general government to recruits and receiving an assignment from them of their claims. The governor has obtained your consent to this on behalf of the government; but I believe it was found that additional legislation would be necessary for the State to carry out this plan, and the governor has in his proclamation recommended the towns and cities to adopt it, and it appears now that many, if not all, of them wall adopt it. The governor seems to be of the opinion that the government would pay the bounty in the stipulated installments even if the recruit deserted., I do not think this would or should be done, and I have so informed such parties as have consulted me. 1 respectfully ask instructions on this point.
“I have also been asked that in case the State does not furnish her full quota under this last call of the President, and a draft is ordered in January to fill it, whether the towns that have filled their quotas by voluntary enlistment will be exempt from that draft.
“ Since the receipt of your telegram of the oth instant, saying that if a State filled her quota under this call no draft would be ordered in January, I have been of the opinion that the same principle would be applied to the towns so far as practicable. I think this would be proper and have a beneficial effect, stimulating all the towns to work earnestly in the recruiting business. 1 respectfully submitthe suggestion to your consideration.
“ I am, colonel, very respectfully, your obedient servant,
“O. A. Mack,

“Major and Aid-de-Gamp,

“Acting Assistant Provost-Marshal-General)’

“ War Department,
“ Provost-Marshal-General’s Oeeioe,
“ Washington, I). 0., November 19, 1863.
“ Brig. Gen. B. W. Hiniís, U. S. Y.,
“ Acting Assistant P. M. G. for New Hampshire,

“ Ooncord, N. E. :

“ General : I am directed by the Provost-Marshal-General to acknowledge the receipt of your communication of the 11th instant, relative to the State advancing the amount of the bounty offered by the general government to recruits and re- *404 ceiviug an assignment from them of their claim. In reply I am instructed to inclose herewith copy of a telegram to'Governor Gilmore of the 5th instant, and to state that if the recruit deserts after delivery to general rendezvous and muster into the United States service the government is alone responsible.
“ As far as possible, towns, &c., will be exempted from draft if their full quota is furnished.
“ I am, general, very respectfully, your obedient servant,
“ Samuel B. Lawrence,
“ Captain, Sixteenth Infantry, and Assistant Adyutant-General.”
This correspondence between subordinate officers of the War Department does not make a contract with the State of New Hampshire. No officer nor representative of the State is a party to it. So far as appears, they learned of its existence many years after it took place. No copy of it is found in the archives of the State. Governor Gilmore, in his letter to the Secretary of War, asking for the repayment of the bounties after the State had furnished its quota, dated January 12,1864, makes no mention of this correspondence. He incloses a copy of the telegram of November 5, and relies upon that and nothing else as constituting the agreement.
The government has already paid to the State the full amount of bounties that could have been claimed by the volunteers had there been no assignment. That amount, in the opinion of the court, is all that the State is entitled to claim within the terms of the agreement.
Whether these, telegrams constitute a contract binding upon the government, and, if not, whether they were subsequently ratified by an act of Congress, under the above ruling of the court are no longer material questions. The government, in the opinion of the court, has done all that its officers engaged it should do, and whether in so doing they exceeded their authority or not does not now concern the claimant.
The court, therefore, answers both questions propounded by the Secretary in the negative.
Ordered by the court that a certified copy of the foregoing findings and opinions of the court be reported by the clerk to the Treasury Department for its guidance and action.